Peter J. Cresci, Esq. (PC7693)
838 Avenue A
Bayonne, New Jersey 07002-0074
1Crescilegal@gmail.com
(201) 215-7780 Tel.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PETER J. CRESCI, Individually; | § | |
| Jane Does 1-4; and John Does 1-4; | § | |
| | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CAUSE NO.  19CV19928 |
| | § | |
| JUSTIN KAZAN, Individually; | § | |
| JOSEPH SPIERS, Individually; | § | |
| ROBERT A. KUBERT, Individually; | § | |
| CITY OF BAYONNE; ALAN S. | § | |
| ELAWADY, Individually; JASON H. | § | |
| OLMO, Individually; DANIEL | § | |
| RAGOZZINO, Individually; | § | |
| JAMES M. DAVIS, Individually; | § | |
| JOSEPH DEMARCO, Individually; | § | |
| John Does 1-10; and XYZ CORPS 1-5 | § | |
| (Fictitious Entities); | § | |
| And Jane Does 1-6, | § | |
| DEFENDANTS. | § | |

## PLAINTIFFS' AMENDED COMPLAINT & JURY TRIAL DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

1.       COMES NOW, Peter J. Cresci; Jane Does 1-4, and John Does 1-4,

Plaintiffs in the above entitled lawsuit, and state the following as their complaint against

the Defendants:  Justin Kazan, Individually; Joseph Spiers, Individually; Robert A.

Kubert, Individually; City of Bayonne; Alan S. Elawady, Individually; Jason H. Olmo, Individually; Daniel Ragozzino, Individually; James M. Davis, Individually; Joseph Demarco, Individually; John Does 1-10; XYZ Corps 1-5 (fictitious entities); and Jane Does 1-6.

2.      This lawsuit is filed under the deprivation of federal and state rights for a series of actions taken by Defendants against Plaintiff culminating in the detention, arrest, and false imprisonment of Plaintiff on September 24, 2019.

## I.  PARTIES

3.      At all relevant time Plaintiff, Peter J. Cresci is an individual who is a citizen of the State of New Jersey and resides in City of Bayonne.

4.      Defendant, City of Bayonne, is a body politic operating under the laws of the State of New and may be served with process by serving a copy of the Summons and Complaint to Madeline Medina, Clerk, 1st Floor, 630 Avenue C, Bayonne, New Jersey 07002.  Individual Defendant Justin Kazan may be served at 10 Pimleco Drive, Tinton Falls. New Jersey 07753; Individual Joseph Spiers may be served at 354 Stephan Avenue, Toms River, New Jersey 08753-2445; Individual Defendant Robert A. Kubert may be served at 594 Avenue E, Bayonne, New Jersey 07002; Individual Defendant Alan S. Elawady may be served at 94 West 29th Street, Bayonne, New Jersey 07002-3812; Individual Defendant Jason H. Olmo may be served at 42 West 24th Street, Bayonne, NJ 07002; Individual Defendant James M. Davis may be served at 9 Eagan Court, Bayonne,

NJ 07002; Individually Defendant Joseph Demarco may be served at 59 Old Colony Road, Bernardsville, NJ 07924;  Individual Defendant Daniel Ragozzino may be served at 15 Packard Street, Bayonne, NJ 07002.   John Does 1-10 and Jane Does 1-6 were agents, servants, employees, and/or officers of the Defendant City of Bayonne and the XYZ Corps 1-5 responsible for the actions described herein.  In September 2019 and times thereto as referred in this Complaint, these defendants were either assigned to work or were in fact working together within the City of Bayonne, and/or involved in encounters with Plaintiff Cresci within the City of Bayonne, County of Hudson, and/or were responsible for supervising the above named Individual defendants and/or were responsible for conducting fair and adequate investigation(s), training, and process relating to the conduct alleged of the above named Defendants along with Defendants John Does 1-10 and Jane Does 1-6 (these names being fictitious but meant to describe unidentified agents, servants, employees and/or officers of the City of Bayonne, County of Hudson, or State of New Jersey; those individuals who had supervisory authority over the officers on the dates in question; individuals who had encounters with Plaintiff Cresci in furthering the violations of civil rights.

5.      City of Bayonne is a government entity situated within the County of Hudson, State of New Jersey, and is a "person" within the meaning of 42 U.S.C. §1983. At all times relevant hereto, the City of Bayonne employed, directed, supervised, condoned, and/or acquiesced in the conduct of Named Individual Defendants, John Does 1-5, and Jane Does 1-3.

6.      John Doe 6-8 (these being fictitious names) were, upon information and belief, members serving the public in private, governmental capacities and had agency, contract, and/or control over the named Individual Defendants.

## II. JURISDICTION

7.      The Court has jurisdiction over the lawsuit, according to 28 U.S.C. §1331,1332, and 1343, as one or more of the causes of action arise under the United States Constitution because this action arises under violations of 42 U.S.C. 1983, 42 U.S.C. 1981; 42 U.S.C. 1985; 42 U.S.C. 1986 and 1988. First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the U.S. Constitution.  Declaratory and Injunctive Relief is authorized pursuant to 28 U.S.C. 2201, 2202 and F.R.C.P. 37.

8.      Plaintiff further invoke the pendent jurisdiction of the court, relating to Plaintiffs' state law claims, pursuant to 28 U.S.C. §1367.

9.      Venue is proper in the District, as it is the District in which Plaintiffs and the most Defendants reside or work and in which the claims arise.

## III. EXHAUSTION OF ADMINISTRATIVE PROCEDURES

10.      All administrative procedures have been exhausted.

## IV. STATEMENT OF FACTS

11.     At all times material hereto, Individual Defendants purported to act and/or acted within and outside the scope of their duties and scope of their employment as the agents, servants, employees and or officers for the Defendant City of Bayonne under the supervision and direction of John  Does 6-8 (these names being fictitious).


12.     At all times material hereto Individual Defendants, John Does 1-10, Jane Does 1-6, acted either intentionally, maliciously, negligently, and/or wantonly under the color of state law and authority, and in reckless, intentional or callous disregard or indifference to the rights secured by Plaintiff Cresci by federal and state laws and rules, First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of New Jersey.


13.     At all times material hereto, Defendants City of Bayonne, John Does 1-10, Jane Does 1-6, XYZ Corps 1-3 (acting as agents for the Defendant City) under the direction and supervision acted by and through its agents, servants, employees and/or Individual Defendants, who acted in accordance with and pursuant to government customs, patterns, policies of committing constitutionally offensive acts including but not limited to the harassment of citizens, the use of excessive force, false arrests, falsifying government records, and or filing of false and baseless charges against law abiding citizens, which customs, patterns, and policies were known, or in the exercise of reasonable, diligence, and care, should have been known to the Defendant City of Bayonne, and its agents, employees, and servants.

14.  City of Bayonne is a governmental entity and/or political subdivision of the State of New Jersey organized and existing under and by virtue of the laws of the State of New Jersey which maintains, operates, manages, and controls the officers, investigations, detention facilities, of which the Defendants were employed.

*Factual Allegations Common to Causes of Actions*

15.     Plaintiff is a longtime resident of the City of Bayonne.  Plaintiff Cresci was a long time employee of the City of Bayonne working as city attorney, acting law director, municipal prosecutor, and Business Administrator.   During these times of residency and employment, Plaintiff became someone who often made protected communications.

16. These protected communications included, but not limited, to the following:

a). Civil Rights Lawsuits, including but not limited to: Cresci v. Aquino, Hudson County, USDC 13CV4395; Smith v. Bayonne, Demarco USDC 17CV4831; Leonard v. Bayonne, Demarco, USDC 16CV5302; Power v. BBOE, USDC 16CV5091; Marroquin v. BPD, USDC 15CV8622; Larino v. Bayonne, USDC 16-CV-02602;   Percella v. Bayonne, USDC 14CV3695; Kraft v. Hudson County, USDC 13CV2785; Fischer v. Hudson & Schillari, USDC 15CV4426, among others, which included Bayonne Police

Brutality Cases:  Suarez v. Bayonne. USCCA 13CV3186; Ramos v. Bayonne 13Cv2444. In a recent deposition in August 2019, a deponent under oath stated that Defendant City of Bayonne had indeed solicited ethics complainants, wrote defaming new articles for publishing by third party newspapers who were incidentally income reliant on the City of Bayonne); recounted the ordered "Cresci Must Die" stated by former mayor, public safety director, and deputy chief of police.   Further, Plaintiff was instrumental in pointing out that the Residency Requirement mandated under City of Bayonne Ordinance 20-16 was indeed not being complied with, resulting in Individual Defendant Demarco being forced to step away as Business Administrator (into a newly created "Special Development Counsel," outside position) for which Demarco first went to Chasen Lamparello Mallon & Cappuzzo (a long time beneficiary of City of Bayonne and BBOE largess) who miraculously received the contract, and then moved on to a another law firm, taking with him the City of Bayonne contract.

   b). A recent Government Records Council (GRC) Order received by Plaintiff Cresci in August 27, 2019  found violations of Open Public Records Act by Defendant City of Bayonne and its employees illegally withholding government records concerning the Police Department.  Such records included the following government records which impacted the Police Department: 1. The City of Bayonne Police Department's [("BPD")] completed form UCR-365 (Monthly Count of Offenses Known to the Police) for the months of January 2011 through the present; 2. The [BPD]'s completed form UCR-370 (Age, Sex, Race and Ethnic Origin of Person Arrested – Ages 18 and Over) for the months of January 2011 through the present; 3. The [BPD]'s completed form UCR-

370u18 (Age, Sex, Race and Ethnic Origin of Person Arrested – Under 18 Years of Age) for the months of January 2011 through the present; 4. A list of all lawsuits and cases in which [the] City of Bayonne [("Bayonne")] or [BPD] or any officer of [BPD] is a defendant, which were filed from January 1, 2010 to the present; 5. Copies of the Complainant and any Amended Complaint in any lawsuit or case described in Paragraph 4; 6. Copies of any settlement agreement, consent order, or other document that resolves, any lawsuit or claim brought against [Bayonne] or [BPD], or any officer of the [BPD], from January 1, 2010 to the present. This includes any document in which [Bayonne] or any representative, agent, insurer, JIF (Joint Insurance Fund), Insurance Commission, or Third Party Administrator (TPA) or other party acting on its behalf, made, makes or agrees to make a monetary payment or transfer of other valuable consideration to resolve a lawsuit or claim; 7. All Notices of Tort Claims presented to [Bayonne] under N.J.S.A. 59:8-1 to 11 since January 1, 2010 involving Police Department personnel;

8. A copy of the Internal Affairs Summary Report Form for BPD, as filed with the State or County Prosecutor, for the years of 2010 to the present. This document is required by pages 47 and 48 of the Attorney General's Internal Affairs Police and Procedure;

9. Copies of all Use of Force Reports filed by members of the BPD from January 1, 2010 to the present; 10. Copies of Employment Contracts for BPD Personnel, including but not limited to: Police Chief, Deputy Police Chief, and Public Safety Director (if any). Likewise, copies of all Employment Contracts (or drafts thereof) for the Chief, Bayonne Fire Department Personnel, including but not limited to Fire Chief, Deputy Fire Chief.

11. Copies of all police rules, regulations, general orders, or Standard Operating Procedures whose subject is any of the following: (a) Internal Affairs; (b) Hiring and

Promotion of Police Officers; (c) Early Warning System, Risk Management System, and/or Performance Improvement System, designed to detect and correct potential misconduct by officers; 12. Copies of any accreditations sought, received, or renewed by BPD from January 1, 2011 to the present. These include accreditations from the Commission on Accreditation for Law Enforcement (CALEA), New Jersey Public Safety Accreditation Coalition, or any other accrediting body. 13. Records of Bayonne's city police not to comment on litigation. 14. Records of calculating and certifying "Time Due" for Police Personnel, Fire Personnel, Administration Personnel from January 2010 through Present, May 31, 2017. 15. Records for Payment of "Time Due" by Bayonne from January 2010 through present, May 31, 2017. 16. Records for the Chief of Police's radio and cellular transmissions during the week of February 23, 2017 which took place on the New Jersey Turnpike indicated in the Officer Robert Ryan incident which was confirmed by the N.J. Turnpike and N.J. State Troopers. 17. Records of BPD Personnel "off duty" overtime transmitted and paid through Bayonne for the time period January 1, 2010 – May 31, 2017. Please include records of time worked and payments to each individual officer, records of reimbursement if any by the third-party Vendor (including but not limited to Skansa (Bridge Project), New Jersey Turnpike construction contractors (14A reconfiguration), all PSE&G projects, and specifically the  contractors milling Kennedy Boulevard).   A copy of the GRC's Order is attached at Exhibit A.


      c). Protected Communications to State of New Jersey Departments and Agencies regarding issues with the City of Bayonne and it's employees; In one instance such protected communications had to do with misuse of office related to the concept of abuse

of office is failure to disclose a conflict of interest. Individual Defendants identified

herein failed to disclose a conflict of interest, had authority and did exercise substantial

discretionary function in connection with a government contract, purchase, payment or

other pecuniary transaction without advance public disclosure of a known potential

conflicting interest in the transaction.  Moreover, Plaintiff was contacted over Individual

Defendant James M. Davis and his misuse of public office, official misconduct, abuse of

subordinates as typified in the Exhibit B provided to Plaintiff a few months ago and

asked for an opinion if there was truth to the allegations therein and what laws may have

been broken.


     d). Protected Communications to the United States Department of Justice;


     e). Protected Communications to the Inspector General, Department of Housing &

Urban Development (HUD) for which the local Bayonne Housing Authority was/is

committing fraud through contracting, billing, allowing Board Members to also sue the

entity (and citing no conflicts of interest); placing residents based on political status,

placing Board Members in to a position on the BHA based on political requests.


     f). Protected communications to the Inspector General, Department of Housing

and Urban Development (HUD) for which the Defendant City of Bayonne use of

Community Development Block Grants administration, including use of funds based on

illegal political patronage, misuse of grants being administered by the Grant Originator

for themselves. Loading the board with political patronage; as well as Defendants ordering monies be expended for contracts that were not necessary or required.

g). Protected communications regarding BCB Community Bank and the Defendant City of Bayonne and Individual Defendants Davis, Demarco, among others. Specifically, where the $1 million of the money for the "tent" go; the contract for payroll and collection of taxes, and Suez water bills.

h). Protected communications with the Joint Terrorism Task Force with regard the zoning approval of certain buildings location in the vicinity of gas and chemical lines and storage units.

i). Filed, as a right, hundreds of successful *ad valorem tax certiorari* appeals against the City of Bayonne as the real estate market dictated.  A Deponent under oath at a recent deposition confirmed that these tax appeals wreaked havoc upon the Defendant City of Bayonne's budget, because the Defendant City of Bayonne could not stop spending, i.e. their spending outweighed the actual resources.

17.    Plaintiff protected communications also included violations of *Honest Services Fraud* violations under federal law, which included, but not limited to, employment at County of Hudson for two (2) would-be candidates for public office, who were bought off by giving them employment at County of Hudson at the direction and affirmation of Individual Defendant Davis.  A deponent in a recent deposition under oath

testified that there were no job announcements, resumes or applications taken, nor interviews, yet jobs were awarded.  In exchange for not running for public officer, the individuals were provided a government job.

18.   Further actions under *Honest Services Fraud* was alleged was contracting under the "fair and open," as well as limits of the contracts being exceeded regularly. These contracts included, but not limited to: legal services, engineering, insurance carriers, brokers and insurance funds.  Further, marketing firms and individuals were illegally hired to taint the Plaintiff's reputation.

19.    Plaintiff Cresci knows there was conspiracy to violate his civil rights due to the actions and statements made by those named and unnamed defendants hereto: "[We] got him, we finally got Cresci!" when the front page of the Jersey Journal printed the Defendants' actions.   William Kobryn, PBA President stated, "sure, Cresci is under a "Code Red;" he has been for years."  Captain Walter Rogers is quoted as stating, "These guys are nuts, creating criminal complaints against Pete; I'm not signing anything." An attorney for the State of New Jersey, Jan Richter stated, "these people hate you; have you thought of moving out of town.  I fear something bad will happen [to you]."  Nita Raval, a named partner in the law firm Florio Kenny Raval (Hoboken) which is generously paid for legal work performed for Defendant City of Bayonne, and the HCDO, admitted, "Mayor Smith slammed his fist on the table and yelled, "Cresci must die." With that the retaliation and civil rights violations ensued.  Defendants stated, in writing, that my law license would soon be taken away, two years prior to that occurring.

21.     Defendant James M. Davis attended a meeting of the Sicilian Citizen's Club, Inc. located at 445 Avenue C, Bayonne, New Jersey seeking the members endorsement on his 2018 reelection campaign when speaking about Plaintiff Cresci stated, he's done in this town, DONE, he is gonna be disbarred.   This was on or about March 6, 2018 as attested to by Dan Caruba, Vincent Cuseglio, and Brian DellaBella.

22.     In addition to a failed criminal complaint in 2010, which resulted in a "no bill" in August 2011 by the same prosecutor Leo Hernandez (the same individual identified as a County employee who had their personal vehicles mechanically serviced by the tax payer without payment), tried again and failed in 2013 (USDC13CV4695). Whether it was filing frivolous ethics complaints as testified by a recent deponent, Plaintiff's vehicle was confiscated; tickets were issued for construction material that was dumped by a county contractor. PEO Linda Vanderweeden admitted she was being ordered to issue tickets against Plaintiff.

23.     Plaintiff was detained and unlawfully arrested on September 24, 2019 at 1:08 PM by law enforcement Defendants named in the area of 34th Street & Kennedy Boulevard, Bayonne, NJ.  Under the pretext of a traffic stop, members of a detective squad stopped Plaintiff driving to the gym and lunch.  No less than six officers came to the stop, surrounding my vehicle *en masse*. Individual Defendant Spiers stated that I was stopped for a traffic violation.  This was incorrect and pretext, as these Individual Defendants had been sitting on Plaintiff awaiting him to leave his property.

24.     Individual Defendants at the traffic stop, and thereafter failed to read Plaintiff his rights. Failed to provide any information or document setting forth the reason for the arrest.  Failed to provide Plaintiff the ability to contact via telephone an attorney, family member, or friend.

25.     Four Days. Plaintiff was taken into custody at approximately 1:08 PM under a guise of a bench warrant alleged from a June 11, 2019 failure to appear to court in Essex County.  The alleged crimes on the aforementioned accusatory instrument are not the enumerated crimes for which an Arrest Warrant is allowed.  Secondly, when finally shown the warrant days later by court personnel, the surname was misspelled, and not my last name. Moreover, it was revealed that Individual Defendants mandated that "no ROR" was a condition of the arrest warrant.   This was not a condition set forth previously in the "bail reform" mandates.  Individual Defendants insured that I would be locked up.  Sent a message.  Plaintiff was stuck in Bayonne Police lock up from 1315 hours until 1805 when Essex County Sheriff's Officers came for transport.   Thereafter, a judge was not made available until Friday, September 27, 2019 and Plaintiff was released "ROR" on Saturday, September 28, 2019 at approximately 1120 hours.

25.  In retaliation for filing this complaint on November 6, 2019, as well as the dismissal and embarrassment of the dismissal of the "stop sign" ticket on November 14, 2019, the Defendant City of Bayonne, and several of the Individual Defendants decided to solicit a criminal complaint from a Badawy Badawy, a convicted federal felon, from

2015 against Plaintiff Cresci.  Badwy Badwy spent 18 months at Fort Dix for insurance fraud.

26.    on S-2019-001126 City of Bayonne Municipal Court Administrator Genny Michane, CMCA signed that Probable Cause is **NOT** Found (and no Judge signed for Probable Cause).  Purposely, the Defendant City of Bayonne officer's name is indecipherable and no badge number is stated on the Complaint-Summons; it is undated where an alleged officer signed..

27.    The summons/complaint: S-2019-00126 was intentionally sent to County of Hudson Prosecutor's Office (which had been conflicted out of any cases previously by the State of New Jersey).  Plaintiff Cresci appeared on January 7, 2020.  Further, actions delineate the violation of law, conspiracy, and RICO requirement is the fact the summons was not remanded to  Municipal Court where the summons would be rightly dismissed for failing to state a claim, and failing to state probable cause.

28. We know the actions of the Individual Defendant police officers were pretext for several reasons, in addition to violations of the 4th, 5th, 6th 8th Amendments as follows:

a).  No police officer ever provided a ticket for the pretextual stop on Tuesday, September 24, 2019 on the scene.  One was received when my property was retrieved for violation of NJSA 39:4-144.   This is absolute pretext because there is no stop sign at 35th Street and Kennedy Boulevard.  This ticket was dismissed on November 14, 2019.

b). Individual Defendants had contacted the Columbian Holding Company, 669 Avenue C, Bayonne earlier looking for Plaintiff and his whereabouts and whether Plaintiff would be attending a meeting at that location looking to arrest Plaintiff.  John J. Fekety-of Morganville, New Jersey- has indicated that Defendants contacted him looking to locate Plaintiff Cresci.  Video demonstrates John Fekety then arrived at the Bayonne Police Department on September 24, 2019.  John Fekety conspired with Defendants in furtherance of their conspiracy.

c). the underlying charge is for legal impossibility and an abuse of process. Former BPD employee Brian Bracken's relative is attempting to collect a questionable civil debt, after her refusal to sign the Release which was a condition precedent to closing out the matter.  In addition to Brian Bracken (who was recently-right before the arrest-noticed to be deposed in USDC 13CV4695), former BPD employee Neil Reynolds, who works with Bracken and received a political appointed job at the Bayonne Board of Education was also involved in this insidious alleged debt collection by using criminal process to collect an alleged debt.  This is an abuse of process.

d). Individual Defendants Kazan, who had been a defendant in a former civil rights federal action, and Individual Defendant Spiers falsified government records wherein they purported that they asked Plaintiff questions about his medical status, family members, as well as their reasons for stopping and arresting Plaintiff.

29.   Individual Defendants took all of Plaintiff's property including, but not limited to all the contents of Plaintiff's wallet, cell phone, including identification, credit cards-both personal and business-as well as contacts with State Police, Federal Bureau of Investigation, and local agencies.  Individual Defendants and Defendant City of Bayonne accessed personal and propriety information without consent or due process in violation of the Fourth Amendment.  Further, the Defendants deprived Plaintiff of his property as itemized.

30. Individually Defendants Kazan and Spiers unlawfully handcuffed, arrested, and took Plaintiff into custody by Defendant City of Bayonne through its agents, servants, and/or employees, including but not limited to Defendant Kazan and Defendant Spiers.

31.      On that time and date, and without legal basis whatsoever and in direct contradiction to the law Individual Defendants unlawfully and intentionally violated Plaintiff Cresci's civil rights; and continued to act in an abusive manner, that they had no right to arrest, detain against his will, and injure Plaintiff Cresci.  The Defendants actions were coordinated, unlawful, wrongful, and conducted themselves in an unconstitutional, intentional, careless, negligent and/or reckless.   Individual Defendants caused the intentional and negligent infliction of emotional distress upon Plaintiff Cresci.

32.     On that time and those dates, Individual Defendants using unlawful and excessive force, falsely arrested and imprisoned Plaintiff.

33.     On those dates and time, September 24-28, 2019, conducted an illegal warrantless search of Plaintiff's property.  In illegally arresting through wrongful, unlawful, and unconstitutional means, Defendants conspired to intentionally abuse process and engage in malicious prosecution by the filing of false and defective warrants against Plaintiff Cresci in an attempt to create the chilling effect of preventing, hindering, and/or interfering with the Plaintiff Cresci's opportunity to thereafter lawfully pursue civil rights claims against Defendants to redress the illegal arrest, which resulted in severe injury to Plaintiff Cresci and the egregious violation of the federal and state statutory and constitutional rights of the Plaintiffs.

34.     Upon information and belief, after initially retrieving and preserving videotape of the interaction in the street, and hallways of the City of Bayonne property, Defendants-who had sole custody of the videotape, subsequently erased, misplaced it and have since not provided the audio, video, and radio transmissions requested.

35.     Upon information and belief, and subsequent to filing the civil action, Defendants further violated Plaintiff Cresci's constitutional rights pursuant to the Ninth Amendment by making false and defamatory statements about Plaintiff Cresci to third parties.  The Defendants have further solicited and processed third party complaints against Plaintiff Cresci.

36.  On that time and date Defendants illegally, unlawfully, and wrongfully swore out a complaint against Plaintiff Cresci, falsely charging him, and falsely arresting him contrary to law and statutory provisions.  Plaintiff Cresci was required to expend significant monies to defend himself.  The Defendants named knew there was no vehicle to arrest Plaintiff Cresci under the provisions listed.

37.     On that time and date Defendants named above knew there was no correct and legitimate arrest warrant against Plaintiff Cresci, but nevertheless maliciously subjected Plaintiff to detention and prosecution.  The filing of the arrest warrant and the information contained therein constitutes malicious prosecution and abuse of process on the part of the Defendants, in violation of the United States Constitution, federal statutory law pertaining to civil rights, the New Jersey Constitution, the New Jersey Civil Rights Act, and state common law.

38.  Upon information and belief Defendants and/or other supervisory personnel engaged in a custom and practice of allowing unjustified arrest warrants, warrantless searches, assaults, false arrests, the use of excessive force and the conduct of malicious prosecutions against citizens, which allows Defendants to harass and intimidate the citizenry.

39.     Individual Defendants swore out perjure laden law enforcement documents, with Individual Defendant Kazan falsely swore out motor vehicle ticket for

failing to stop at a Stop Sign that does not exist at 35th & Kennedy Boulevard.  Defendant

officers and the City of Bayonne's Police Department have a long history of engaging in

improper and criminal behavior that violated many people's civil rights. Police

Department's personnel has waned in recent years, with officers walking away when

drug tests are administered, and recruiting with testing scores of low eighties.  In additon,

despite the federal indictments, Defendant City of Bayonne has refused to correct the

actions of the Bayonne Police Department, likely as Defendant James M. Davis is a

former police captain.


40.     Equally retaliatory and complicit are the actions of Eric Nemeth, 16 Knoll

Top Court, Denville, New Jersey, currently working as secretary for the insurance fund

for the Defendant City of Bayonne, NJIIF (New Jersey Intergovernmental Insurance

Fund).  Mr. Nemeth's actions as seen through the e-mail traffic and phone records

demonstrate that Mr. Nemeth has knowledge, conspired to, decision making, and directed

actions against Plaintiff Cresci.


41.     The NJIIF, for which Mr. Nemeth works has long designated political

individuals that he insures as board members, which violates not only the contractual

obligations of the fund, as well as causes conflicts of interest.  For instance Individual

Defendant Joseph Demarco was placed on the board, as well as previous BMUA

employee State Gallo, and previous City of Bayonne Andrew Casais.

42.     Moreover, per Michael D'Aquanni and Michael A. Cifelli each indicated that Plaintiff Cresci's involvement with certain civil cases were the reason for Plaintiff Cresci being retaliated against by Defendant City of Bayonne, and some Individual Defendants.

43.     In the event discovery reveals the identity of any other agents, servants, employees and/or officers of Defendant City of Bayonne, whose identities are presently unknown and who participated in any of the actions or inactions referenced above, this complaint names John Does 1-10 (these names being fictitious), Jane Does 1-6 (these names being fictitious), and XYZ Corps 1-3 (these entities being fictitious). Each of the named Defendants in the preceding paragraphs was acting within/and outside the scope of his/its employment and/or under the color of law as agents, servants, employees, or officers of the County of Hudson. Each is sued in both official and individual capacities.

44.  Plaintiff suffered physical, mental, and emotional pain and distress.  Plaintiff has suffered professionally and personally. Plaintiff was not provided food and drink during the fifteen hours, and endured 4 days of imprisonment.  Plaintiff had to receive medical attention for burns, cuts, and bruising on his person, as well as medication for unusually high blood pressure, and as denied medication.

## V. STATEMENT OF CLAIMS

**A.      VIOLATIONS OF PLAINTIFF'S FOURTH AMENDMENT-FALSE ARREST/IMPRISONMENT; (FOURTH & FOURTEENTH AMENDMENTS OF US CONSTITUTION, 42 U.S.C. §1983) and The New Jersey Civil Rights Act, N.J.S.A. 10:6-2, et seq.**

45.      Plaintiff incorporates paragraphs 1-44 as of set forth herein.

46.      At all times relevant, the Defendant Officers and Public Safety Director Kubert were agents, servants and/or employees of the Defendant City of Bayonne and/or Bayonne Police Department and were, at all times, acting in their official capacity as law enforcement officers.

47.      Individual Defendant Officers unlawfully seized, detained, arrested, and or imprisoned Plaintiff despite a lack of probable cause and/or other satisfactory legal justification and support.   Individual Defendants Police Officers held Plaintiff against his will and restricted his freedom to leave.  The Individual Defendant Police Officers' respective conduct, acting under the color of law, is described in detail in preceding paragraphs and incorporated here by reference.  The Defendants by their unlawful conduct, individually and/or in concert, either negligently or knowingly, intentionally, willfully and/or maliciously or with reckless and callous disregard of, or deliberate indifference to the rights, privileges, and immunities secured by Plaintiff by the Constitution of the United States of America, and Amendments, and by the Constitution of the State of New Jersey, attempted to, and did deprive Plaintiffs of same in violation of 42 U.S.C. 1983 and 1985.

48.      Individual Defendants did not have knowledge or reasonably trustworthy information of facts and circumstances that would have led to the exercise of a bench warrant not in Plaintiff's name. The underlying charges are not those enumerated under New Jersey law to effectuate an arrest through a warrant.  They are effectuated through a summons.

49.     As a direct and proximate cause of the unlawful acts of the Defendants, Plaintiff Cresci has suffered and continues to suffer, and in the future will suffer, excruciating and agonizing mental anguish, humiliation, embarrassment, as well as limitation and restriction of his usual activities, pursuits, and pleasures.

50.     It was not objectively reasonable for Individual Defendant Police Officers and Individual Defendant Kubert, and Defendant City of Bayonne to believe they could arrest Plaintiff under a summons complaint.   Defendants clearly deprived Plaintiff of his established constitutional rights to be free from false arrest.  A reasonable officer would comprehend that the conduct described herein would violate Plaintiff's rights. Defendants, City of Bayonne, John Does 1-4, are liable to Plaintiff under the Fourth and Fourteenth Amendments and 42 U.S.C. §1983, and NJSA §10:6-2.

51.     As a further direct and proximate result of the unlawful acts of the Defendants, Plaintiff Cresci suffered extremely serious and debilitating physical injuries of both temporary and permanent nature, requiring the care and treatment by medical health professionals, requiring medication, and pain and suffering.  Moreover, as a direct and proximate result of the unlawful and improper conduct of the Defendants, Plaintiff Cresci was incarcerated and suffered the loss of his freedom.

52.     At the time of the arrest Individual Defendant Officers were acting under the color of law and regulations of the State of New Jersey and City of Bayonne, and its Police Department.  The policy and custom led to Defendants' actions of deliberate indifference to the constitutional rights of individuals.  The conduct of the Individual Defendants resulted in illegal entry into Plaintiff's property, in violation of the Fourth Amendment.  In addition, the Fifth Amendment, Sixth Amendment rights of Plaintiff Cresci were also violated, in addition to the civil rights of Plaintiff per 42 U.S.C. §1983 and §1985 as a conspiracy to violate civil rights.

53.     The exercise of these established policies and customs violated Plaintiff's clearly established rights under the Constitutions of both the United States and the State of New

Jersey, against: a) unreasonable searches and seizure of his person (4th & 14th Amendment); b) the use or unreasonable, unnecessary and excessive force; c) to medical care for injuries received while in custody.

54.     Individual Defendants Police Officers acted intentionally, unlawfully, maliciously, willfully, deliberately, or with reckless disregard for Plaintiff's clearly established Federal and State Constitutional rights.

55.     By reason of/or as a result of the Individual Defendant Police Officers' acts and/or omissions, Plaintiff was deprived of his liberty, caused physical and emotional injury, anguish, and embarrassment, and was otherwise injured and/or harmed.

### B.  VIOLATIONS OF PLAINTIFF'S FOURTH AMENDMENT-ILLEGAL SEARCH & SEIZURE; (Fourth & Fourteenth Amendments of US Constitution, 42 U.S.C. §1983; and New Jersey Civil Rights Act)

56.     Plaintiff incorporates paragraphs 1-55 as of set forth herein.

57.     Defendant Officers, without a correct warrant or justification, wholly lacking in any cause whatsoever, probable or otherwise, illegally and improperly searched, detained, arrested, and seized Plaintiff, and caused a criminal complaint to be illegally issued against him.  Individual Defendants Police Officers had no legal basis to stop, search, detain, arrest, seize, or cause charges to be issued, and did so maliciously with a motive to improperly detain, arrest, and imprison Plaintiff.  All of these actions were undertaken in violation of the Fourth Amendment's proscription of unreasonable searches and seizures.

58.      The acts and/or omissions described herein were undertaken and conducted in a willful and malicious manner, with an immoral purpose to injure the person, reputation, standing, and integrity of Plaintiff.   Defendants have a pattern, practice, and history of

"Do Him" mentality wherein they use their authority under the color of law to subvert a person's rights.  Defendants, therefore, are liable to Plaintiff for punitive damages.

59.     The conduct described constitutes excessive force.  By the conduct described throughout this complaint, Individual Defendants' actions willfully deprived Plaintiff his constitutional right to be free from excessive force and are liable to Plaintiff under the Fourth and Fourteenth Amendments and 42 U.S.C. §1983.

60.     As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff was humiliated, disgraced, suffered damage to his reputation, physical, and mental anguish and injury, monetary loss and damage all to his great detriment.

## C.  VIOLATIONS OF PLAINTIFF'S FIRST AMENDMENT- Retaliation/Reprisal for Engaging in Protected Activity/Free Speech/Chilling Effect;  42 U.S.C. §1983 New Jersey Civil Rights Act N.J.S.A. §10:6-2, et seq. & New Jersey Constitution

61.  Plaintiff incorporates paragraphs 1-60 as of set forth herein.

62. Defendant City of Bayonne deprived Plaintiff Cresci of his rights under the First and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §1983, the Constitution of the State of New Jersey  as well as the New Jersey Civil Rights Act by failing to take action, targeting, and retaliating against Plaintiff for political reasons.

63.   Specifically, and s stated in the proceeding paragraphs, Defendant City of Bayonne and the Defendant Officers retaliated against Plaintiff because he actively and whole heartedly campaigned against public corruption and Honest Services Fraud taking place in the Bayonne Police Department, as well as actions by Defendant James M. Davis and Defendant Joseph Demarco, among others.

64.    Defendants' words, actions, falsifying government records, and warrant laid by them were willful, malicious, false, and wrongful, without reason or basis in the law. Their acts were committed in bad faith and solely for the purpose of falsely imprisoning Plaintiff and damaging Plaintiff's reputation and depriving him of liberty.

65.    As a direct and proximate result of the described unlawful and malicious actions, Defendants all committed under the color of their authority as detectives and Officers of the law.  While Defendants acted in and outside their capacity, Plaintiff suffered damages all of which is a violation of his rights under the Constitution of the United States, in particular: First Amendment, 42 U.S.C. §1983, and the New Jersey Civil Rights Act and Constitution of the State of New Jersey.

66.    Plaintiff was injured in his reputation and property by actions of the Defendants in furtherance of the false imprisonment, and Plaintiff was deprived of having and exercising his rights and privileges as a citizen of the United States in violation of 42 U.S.C. §1981, §1983, and §1985 (2) and (3).

67.    As a proximate result of the Defendants' actions, committed under color of their authority as detectives and officers of the law, Plaintiff was injured and suffered damages.


## D.    ABUSE OF PROCESS

68.  Plaintiff incorporates paragraphs 1-67 as of set forth herein.


69.    The actions of the Defendants in causing Plaintiff to be arrested falsely, falsely imprisoned, deprived of his constitutional rights  were effected for the ulterior purpose of causing Plaintiff to be unlawfully deprived of his liberty and civil rights, to suffer inconvenience, humiliation, embarrassment, shame, damage to his reputation and good name, and to incur legal expenses.

70.     The arrest and imprisonment of Plaintiff by Defendants was wrongful, malicious, willful, and without justification or excuse, and an abuse of process.

71.     As a direct and proximate result of the above-described unlawful and malicious acts of Defendants, the Defendants all committed under the color of their authority as detective, officers, and officers of the law, while acting in that capacity, Plaintiff suffered damage, all of which is a violation of his rights under the laws and Constitution of the United States, in particular the First, Fourth, Fifth, Eighth and Fourteenth Amendments and the laws thereof, and 42 U.S.C. §1981, §1983, §1985 (2) and (3).

72.     As a further result of the acts described herein, Plaintiff was deprived if his rights and immunities secured to him under the U.S. Constitution and the Constitution and Civil Rights laws of the State of New Jersey including but not limited to: his rights under the Fourteenth Amendment to be secure in his person, to be free from punishment without due process, and to equal protection of the laws.

73.     By reason of the foregoing, Plaintiff was under color of process, unlawfully deprived of his liberty and civil rights, caused to suffer inconvenience, humiliation, shame, embarrassment, damage to his reputation and good name.

### E.  MUNICIPAL LIABILITY UNDER 42 U.S.C. §1983 and The New Jersey Civil Rights Act, N.J.S.A. §10:6-2, et seq.

74.  Plaintiff incorporates paragraphs 1-73 as of set forth herein.

75. At all relevant times, Individual Defendant City of Bayonne and/or Bayonne Police Department was the employer of the individual defendant police officers and these individual defendant officers were acting as agents, servants, and employees.  Likewise, Defendant Kubert, Defendant Davis, and Defendant Demarco were acting as agents,

servants, and/or employees.

76.     City of Bayonne, Bayonne Police Department failed to use reasonable care in the selection of its employees, against and/or servants, failed to properly train and/or supervise the individual defendants, and failed to provide appropriate safeguards to prevent the false documents, excessive force, assault, conspiracy, and collective violation of Plaintiff's rights.

77.     City of Bayonne, Bayonne Police Department acted under the color of law pursuant to an official policy or custom and practice of the City of Bayonne, Bayonne Police Department and intentionally, knowingly, recklessly, or with deliberate indifference failed to properly and adequately control and discipline on a continuing basis its employees, agents, and/or servants and/or otherwise failed to prevent the individual defendants from unlawfully and maliciously conducting, permitting or allowing the Constitutional violations alleged above in violation of the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and the laws of the United States and/or New Jersey.

78.     Defendant City of Bayonne, Bayonne Police Department had knowledge of, or had it diligently and reasonably exercised its duties to instruct, supervise, control and discipline its employees, agents and/or servants, would have knowledge of the wrongful acts and/or omissions identified above and intentionally, knowingly, or with deliberate indifference to Plaintiff's rights, failed or refused to prevent their commission and/or omission.

79.     City of Bayonne, Bayonne Police Department, therefore, directly or indirectly, and under the color of law, thereby approved or ratified the unlawful, malicious and wanton conduct of the individual defendants named herein.

80.     Defendant City of Bayonne has repeatedly failed to train or supervise their officers in issuing truthful investigative reports and corresponding charges.  Indeed, the lack of training and supervision led to the Defendants violating the Plaintiff's Constitutional Rights.

81.  Defendant City of Bayonne's policy maker knows the glaring need for training within the Bayonne Police Department; nonetheless the Policymaker for City of Bayonne refuses to retrain or properly train its officers, create a legitimate IA department, or properly investigate and discipline instances of police misconduct.  Further, likewise there is no proper training for James M. Davis, Robert Kubert, nor Joseph Demarco in that their positions are not for their personal edification, nor to retaliate against those that object to their actions.  Especially when each have had successful retaliation complaints filed against them.

82.     The lack of training and/or inadequate training in these areas is tantamount to a custom and/or  policy that encourages, and indeed s occurred here, necessitates, the violation of these fundamental rights.

83.     The failure to train the Individual Defendants in these areas is tantamount to the City of Bayonne deliberate indifference to these rights.

84.     Moreover, the City of Bayonne had a custom and practice of inadequately investigating, if investigating at all, citizens' complaints regarding abuse of process, unlawful arrest, imprisonment, and prosecution.  In addition, City of Bayonne has a policy and practice of not disciplining officers of they are found to have violated a citizen's constitutionally protected rights and immunities.

85.     The City of Bayonne may conduct investigations into allegations of police misconduct, and they failed to conduct an investigation into the instant conduct.  These polices and procedures, in addition to failure to train the officers in the relevant constitutional laws, reveal a deliberate indifference by the City of Bayonne regarding the rights of citizens such as Plaintiffs.

86.     The deliberate indifference to citizens' rights is a proximate cause of Plaintiff's injuries. Indeed had the City of Bayonne properly trained the individual defendants, then the violations would not have occurred.  If the City of Bayonne employed a more meaningful IA bureau, rather than employing one that shields and insulates officers from liability, then perhaps the defendant officers here would not have felt that they had the freedom to willfully and purposely violate the Plaintiffs' rights without any regard for consequences.

87.     The lack of accountability, record keeping, training, as well as investigation into IA complaints renders the IA department nothing more than an arm of the police department that shields officers from liability.  Moreover, IA does no meaningful investigate complaints and is tantamount to tacit approval of the tactic.

88.     The failure to correct or cull unlawful activities of police officers in the Bayonne Police Department as exposed by previous complaints caused Plaintiff's injuries here as the officers acted in a cavalier matter, ignored basic civil rights, due to the fcat that they knew there would be no professional consequences of their actions.

89. Indeed, defendants named herein have engaged in serious civil rights violations which the Defendant City of Bayonne has failed to address but allowing these individuals to maintain their employment and continue to terrorize the civilians they swore to protect.

90.     By way of example, Individual Defendant Kazan was an actor in *Marroquin v. Police Chief Sciani, City of Bayonne USDC 15-8622,* and his actions were not investigated, nor did punishment ensue for Defendant Kazan's actions.  This is a case in which Marroquin was illegally detained, and falsely charged.

91.     Officers have been under federal indictment when accused of falsifying records and covering up civil rights violations, and permitted to continue working within the City of Bayonne. Some have been promoted.

### F. NEW JERSEY RACKETEER INFLUENCED AND CORRUPT
### ORGANIZATIONS ACT, §2C:41-2(c), et al.
### (Against All Defendants)

92.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 85

as fully set forth herein.  This cause of action is pled against Defendants


93.     It is unlawful under N.J.S.A. 2C:41-2(c) for any person associated with any

enterprise, the activities which affect trade or commerce, to conduct or participate,

directly or indirectly, in the conduct of such enterprises' affairs through a pattern of

racketeering.


94.      The City of Bayonne is a criminal enterprise within the meaning of N.J.S.A.

2C:41-2(c).  Alternately,  the named individual defendants formed associations in fact

within the meaning of N.J.S.A. 2C:41-2(c) for the common purpose of advancing James

M. Davis' unconstitutional guiding of illicit contracts, patronage policy, misuse of

government funds, falsifying bond and securities, misuse of office, and official

misconduct. Each of the defendants, participated, either directly or indirectly, in the

conduct or the affairs of an enterprise constituting a pattern of pattern of racketeering

activity. In that they constituted a regular way of conducting the defendants' ongoing

legitimate businesses and/or that their actions are a regular way of conducting or

participating in an ongoing and legitimate enterprise.


95.      The enterprise engaged in or its activities affected trade or commerce.

96.     The named Individual Defendants were employed by or associated with Enterprise.

97.     The named Individual Defendants engaged in pattern of racketeering activity in that at least two predicate acts were committed.

98.     The named individual defendants conducted or participated directly or indirectly in the conduct of the Enterprise's affairs through that pattern of racketeering activity.

99.     The named individual defendants acted knowingly and purposely.  James M. Davis and Joseph Demarco set the purpose of the Enterprise, namely the unconstitutional and corrupt misappropriation of government resources to advance the guiding of illicit contracts, patronage policy, misuse of government funds, falsifying bond and securities, misuse of office, and official misconduct.

100.    It is unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.  Defendants remitted payments to local politicians, law firms, insurance funds, insurance carriers, city government, police department, and county government, in order to effectuate the conspiracy and acts against the Plaintiffs and their properties.

101.    Individual Defendants participated in a pattern of racketeering activity as there is

a direct relationship which existed between the injury asserted and the injurious conduct alleged. All Individual Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of  NJSA 2C::41-2(c).

102.     The Racketeer Influenced and Corrupt Organization Act further states it is unlawful to conspire to violate any of the provisions of the Act.  During the ten (10) calendar years preceding, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the NJ RICO predicate acts that are itemized in the RICO laws at NJSA 2C::41-2(c) and did so in violation of the NJ RICO law Prohibited activities. Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of the NJ RICO law.

103.     Defendants conspired with government officials, county, and municipal government, City of Bayonne, and additional co-conspirators, to commit conspiracy against the plaintiffs, as well as to commit violations RICO statute, as well as affected interstate commerce.

104     In particular, Individual Defendants Davis, Kubert participated in the affairs of

the enterprise by directing their subordinates to "Do" Plaintiff and use excessive force,
file false police reports in the arrest and illegal detention on and after September 24, 2019
in violation of NJSA §2C:41-2(c).  Further, the above named Defendants racketeering
acts include, but not limited to, Bribery (NJSA §2C:27-2), by direct solicitation for
donations for a right to receive public rights or public benefits; Theft by Extortion (NJSA
2C:20-5), Official Misconduct (NJSA 2C:30-2); Misuse of Public Office by the
individual named Defendants, including Mayor James M. Davis, exertion of control or
undue influence over terms and conditions of Plaintiffs' work, license, well-being, and
freedoms.

105.    Defendant Mayor Davis and the named defendants formed an association in fact
and/or were employed by the criminal enterprise for the common and continuing purpose
of promoting, maintaining, and protecting James M. Davis' political power.  By
arrogantly abusing the power entrusted to them and exploiting workers for political
purposes, Defendants promoted a culture of corruption within the Police Department a
culture we exposed through the state and federal investigations.

106.    Each named Individually Defendant knowingly used his or her respective
government position to implement and execute, whether directly or indirectly Mayor
Davis' unconstitutional and illegal patronage  policy. Each individual named defendant
had a direct and/or indirect role in participating in the affairs of the criminal enterprise
through a pattern of racketeering and knowing the purpose of the enterprise.

107.     Defendants have been and are able to commit the acts of racketeering forming by virtue of their association with and employment by the Enterprise, and the acts of racketeering are related to the activities of, and are committed in furtherance of the enterprise.  Those named defendants all participated directly or indirectly in the affairs of the criminal enterprise as defined under NJSA §2C:41-1, et seq. through racketeering activities, including carrying on to fruition political patronage policy to maintain their political power.

108.     The association in fact of these persons constitutes an enterprise within the meaning of NJSA 2C:41-1(c) (the "Enterprise"), which functions as a continuing unit.

109.     Defendants' Enterprise affects commerce and trade by awarding government contracts, benefits and privileges to political allies or patrons while depriving non-Enterprise supporters of similar benefits and privileges in violation of the New Jersey Constitution and state law through a pattern of racketeering.

110.     Defendants' individual acts make each principally liable for violations of NJSA2C:41-1(c).  In addition each of the Defendants knowingly and intentionally aided and abetted Defendants other than himself/herself/itself whom were involved in the operation and management of the Enterprise in the commission of two or more predicate acts forming a pattern of racketeering activity with the intent of assiting the successful completion of said racketeering activity.

111.    Plaintiffs have been injured by reason of the aforementioned violations of NJSA 2C:41-1(c), including injury by reason of the predicate acts constituting a pattern of racketeering activity. Plaintiffs have suffered and continue to suffer economic and emotional distress damages in an amount determined by a jury.

112.   Wherefore, pursuant to the statutes at NJSA 2C:41-1(c) Plaintiff requests judgment against all named Defendants as follows:

a.  That this Court liberally construe the New Jersey RICO laws and thereby find that all Defendants, both jointly and severally, have acquired and maintained, both directly and indirectly, an interest in and/or control of a New Jersey RICO enterprise of persons and of other individuals who were associated in fact, all of whom engaged in, and whose activities did affect, interstate and foreign commerce in violation of NJSA 2C:41-1(c) (Prohibited activities).

b.   That Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation of NJSA 2C:41-1(c)  and from all other violation(s) of applicable State and federal law(s).

c.  That judgment be entered for Plaintiff and against all Defendants for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations of NJSA 2C:41-1(c), according to the best available proof.

d.   That all Defendants pay to Plaintiff treble (triple) damages, under authority of NJSA 2C:41-1(c), for any gains, profits, or advantages attributable to all violations of NJSA 2C:41-1(c), according to the best available proof.

e.   That all Defendants pay to Plaintiff all damages sustained by Plaintiff in consequence of Defendants' several violations of NJSA 2C:41-1(c), according to the best available proof.

f.   That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of NJ RICO and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, legally foreign with respect to the federal zone [sic], for the benefit of Plaintiff, his heirs and assigns.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows: (i) Compensatory damages; (ii) mandatory treble damages; (iii) mandatory reasonable attorneys' fees and costs pursuant to the New Jersey Racketeer Influenced and Corrupt Organization Act, NJSA §2C:41-1(c); (iv) any other relief the Court deems just and proper.

### G.  NEW JERSEY RICO CONSPIRACY N.J.S.A. §2C:41-2(d)
(All Defendants)

Plaintiffs hereby re-allege and incorporate by reference all previous paragraphs as fully set forth herein.  This cause of action is pled against all Defendants

113.      Defendant James M. Davis and the other individually named defendants conspired to violate the provisions of NJSA 2C:41-1(c) in the manner set forth above.

114.      Each of the named Individual Defendants knowingly agreed to participate directly or indirectly in the conduct and affairs of the enterprise by agreeing to commit, or to aid other members of the conspiracy to commit at least two racketeering events and purposely with knowledge of the unlawful objective of the conspiracy and with the intent to further its unlawful objective. Accordingly, all individually named defendants violated NJSA §2C:41-2(d).

115.      Plaintiffs have been injured in their trade, commerce by reason of the aforementioned illegal activities NJSA §2C-41:1(c), including injury by reason of the predicate acts constituting a pattern of racketeering activity.

116.      As a direct and proximate result of the defendants' unlawful conduct, Plaintiff has suffered damages including, though not limited to, loss of employment, loss of business reputation, and other damages to date in the amount determined by a jury at time of trial.

WHEREFORE, Plaintiffs demand entry of judgment against the Defendants, jointly and severally, for the following relief:

a.     Treble Damages;

b.     Compensatory Damages;

c.     Punitive Damages;

d.     Attorney's Fees, interest, and costs of suit;

e.     Such other further relief as the Court deems equitable and just.

## VI.  JURY DEMAND

117.    Plaintiffs hereby demand a trial by jury of their peers.

## VII.  PRAYER

118.    WHEREFORE, Plaintiffs request judgment against Defendants, for:

a.  Compensatory damages under 42 U.S.C. §1983, §1988, and all statutory and common law violations herein pled and damages (pecuniary and non-pecuniary) including but not limited to damages for mental and emotional anguish, humiliation, anxiety, and distress; and

b.  Compensation to Plaintiff for mental anguish in the past and the future; and

c.  Consequential damages for the breach of contract claim, as well as punitive damages for the bad faith claim; and

d. Punitive Damages; and Treble Damages as allowed;

e.  Attorney's costs, fees, and expenses under 42 U.S.C. §1988 and other applicable statutes; and

f.  Declaratory and injunctive relief of expunging the illegal arrest and processing; and

g. An award of injunctive relief effectively prohibiting the City of Bayonne and supervisory defendants from engaging in practices, customs and policies described herein and compelling retraining of all personnel involved in law enforcement and investigation as to the appropriate manner of interacting with the citizenry.

h.  any and all other general or specific relief, both at law and in equity, to which Plaintiff may be justly entitled;

Respectfully submitted,

January 26, 2020

PETER J. CRESCI
838 Avenue A
Bayonne, New Jersey 07002
Telephone:      (201) 215-7780
Telecopier:     (888) 803-9705
1Crescilegal@gmail.com

By:_____*Peter J. Cresci,  /s/*_____
    **PETER J. CRESCI, (PJC 7693)**
    PLAINTIFF, PRO SE