UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER J. CRESCI, JANE DOES 1–4, and JOHN DOES 1–4,<br><br>Plaintiffs,<br><br>v.<br><br>JUSTIN KAZAN, JOSEPH SPIERS, ROBERT A. KUBERT, CITY OF BAYONNE, ALAN S. ELAWADY, JASON H. OLMO, DANIEL RAGOZZINO, JAMES M. DAVIS, JOSEPH DEMARCO, JOHN DOES 1–10, XYZ CORPS 1–5, and JANE DOES 1–6,<br><br>Defendants. | Civ. No. 19-19928 (KM) (SCM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Peter Cresci alleges that the City of Bayonne and its employees violated his constitutional rights and conspired against him when, following a traffic stop, he was arrested on an outstanding warrant. Now before the Court is Defendants' motion to dismiss the amended complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) (DE 13).[1] For the following reasons, the motion is **GRANTED**.

I.  **BACKGROUND**
  A. **Facts**

Much of the Complaint consists of conclusory allegations. Disregarding those allegations, I am left with few factual allegations that are entitled to be

---

[1]   Citations to certain record items will be abbreviated as follows:
   DE = Docket entry number
   1AC or Complaint = Plaintiffs' Amended Complaint (DE 6)

credited as true for purposes of a motion to dismiss. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

Cresci was pulled over by police officers Justin Kazan and Joseph Spiers after he failed to stop at a stop sign in Bayonne. (1AC ¶ 23, 25, 28(a), 30.) According to Cresci, there was no basis for the stop because there is no stop sign where he was pulled over. (*Id.* ¶ 28(a).) Kazan and Spiers took Cresci into custody at a Bayonne jail because he had an outstanding warrant for failure to appear before an Essex County court. (*Id.* ¶ 25.)[2] After a few hours, Cresci was transferred to an Essex County jail and released four days later. (*Id.*) Cresci alleges that the stop and arrest were part of a conspiracy against him by Bayonne city officials in response to his campaign against public corruption. (*Id.* ¶¶ 63–64.) He alleges that city officials Joseph DeMarco and James Davis and other officials committed misconduct in their positions, which Cresci "campaigned against," and that his arrest was in retaliation for that campaign. (*Id.* ¶ 16, 17, 63, 104–06.)

### B. Procedural History

In response to his arrest and this alleged conspiracy, Cresci (he also names John Doe plaintiffs) brought this action, naming as defendants Kazan, Spiers, Robert Kubert (Kazan and Spiers' supervisor), DeMarco, Davis, and the City of Bayonne, along with individuals Alan Elawady, Jason Olmo, and Daniel Ragozzino (although the Complaint never explains who they are), and John Doe defendants. (1AC ¶ 4.) Proceeding under both 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2(c), Cresci alleges the following claims against all Defendants (the "civil rights claims"): false arrest and imprisonment (1AC ¶¶ 45–55) (Count A), illegal search and seizure (*id.*

---

[2] Bayonne is not in Essex County, but in Hudson County. Although the Complaint does not so specify, I may obviously consider this fact. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (explaining that, on a motion to dismiss, courts may consider matters of public record); *Fife & Drum, Inc. v. DelBello Enters., LLC*, Civ. No. 17-3676, 2019 WL 5692124, at *3 n.7 (D.N.J. Nov. 4, 2019) (taking judicial notice that a city was located in a particular county).

2

¶¶ 56–60) (Count B), retaliation for engaging in First Amendment activity (*id.* ¶¶ 61–67) (Count C), and abuse of process[3] (*id.* ¶¶ 68–73) (Count D). Also under § 1983 and the NJCRA, he asserts a municipal liability claim against the City. (*Id.* ¶¶ 74–91) (Count E). In addition to the civil rights claims, he alleges a New Jersey Racketeer Influenced and Corrupt Organizations Act ("NJRICO"), N.J. Stat. Ann. § 2C:41-1 *et seq.*, and NJRICO conspiracy claim against all Defendants. (*Id.* ¶¶ 92–116) (Counts F and G).

## II. DISCUSSION AND ANALYSIS

All of the claims fail, albeit for a few different reasons. I first address the civil rights claims against the individual Defendants, then the civil rights claims against the City, and finally the NJRICO claims against all Defendants.

---

[3] While the Complaint titles this count "abuse of process," the allegations supporting it suggest that it is better viewed as a malicious prosecution claim. The tort of abuse of process applies when a person abuses legal processes *after* an action has been commenced. *Baglini v. Lauletta*, 768 A.2d 825, 831–32 (N.J. Super. Ct. App. Div. 2001); *see also Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989). Accordingly, the plaintiff must show that the defendant "performed additional acts" beyond commencing the legal proceeding. *Hoffman v. Asseenontv.com, Inc.*, 962 A.2d 532, 431 (N.J. Super. Ct. App. Div. 2009). The Complaint makes no allegations regarding any of the defendants' actions beyond their alleged involvement in Cresci's initial arrest and detention. What is more, the Complaint alleges that Cresci's arrest and detention is the basis for his abuse of process claim. (1AC ¶ 70.) Thus, because the Complaint's allegations focus on the commencement of legal proceedings against Cresci, any abuse of process claim would fail. *Hoffman*, 962 A.2d at 431; *see also Morisseau v. Borough of N. Arlington*, Civ. No. 16-837, 2018 WL 1522731, at *17 (D.N.J. March 28, 2018) (dismissing abuse of process claim for failure to allege further acts).

Nonetheless, a malicious prosecution claim is available when a plaintiff alleges that government actors wrongfully commenced criminal proceeding against him, as it seems Cresci alleges here. *See Allen v. N.J. State Police*, --- F.3d ---, No. 19-3138, 2020 WL 5405373, at *2–3 (3d Cir. Sept. 9, 2020); *Baglini*, 768 A.2d at 831–32. As a result, I will construe the abuse of process claim as a malicious prosecution claim. *See Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 391 (6th Cir. 2020) ("The label which a plaintiff applies to her pleading does not determine the nature of the cause of action." (alterations and citation omitted)); *accord Bechtel v. Robinson*, 886 F.2d 644, 649 n.9 (3d Cir. 1989) ("[A]s long as the issue is pled, a party does not have to state the exact theory of relief in order to obtain a remedy.").

3

### A. Standard of Review

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations. Nevertheless, "a [party's] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the factual allegations must be sufficient to raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* "Complaints filed pro se are construed liberally, but even a pro se complaint must state a plausible claim for relief." *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) (citation and internal quotation marks omitted).

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the pleading are accepted as true and all reasonable inferences are drawn in favor of Cresci. *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

## B. Civil Rights Claims Against the Individual Defendants

### 1. The Claims Against Elawady, Olmo, Ragozzino, John Doe Defendants, DeMarco, Davis, and Kubert

I will dismiss the civil rights claims against all the individual Defendants, except Kazan and Spiers, because Cresci has not adequately pleaded their personal involvement. In a § 1983 case, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 676). A plaintiff must show personal involvement through factual allegations. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). NJCRA claims similarly require that a plaintiff show that a person acting under color of law deprived him of a constitutional right. *Perez v. Zagami, LLC*, 94 A.3d 869, 877 (N.J. 2014); *see also Walker v. City of Newark*, Civ. No. 19-16853, 2020 WL 3542502, at *13 (D.N.J. June 30, 2020) (explaining that NJCRA claims and § 1983 claims are analyzed analogously).

The Complaint does not satisfy the personal-involvement requirement for most of the individual Defendants. First, the Complaint contains no factual allegations regarding the conduct of Elawady, Olmo, Ragozzino, or the John Doe defendants; rather, they are simply named in the Complaint. (1AC ¶ 4.)[4] Next, as to DeMarco and Davis (who appear to be city officials (*id.* ¶¶ 16, 17)), the Complaint only alleges that they committed misconduct in their positions, which Cresci "campaigned against," and that Cresci's arrest was in retaliation for that campaign. (*Id.* ¶ 63.) But there is no allegation that DeMarco or Davis *themselves* deprived Cresci of any constitutional right or participated in such a deprivation, so the claims against them fail. *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (explaining that the Supreme Court

---

[4] Cresci never identified or served the John Doe defendants, so they must be dismissed for that reason as well. *Beckerman v. Weber*, 317 F. App'x 125, 128 (3d Cir. 2008) (citing Fed. R. Civ. P. 4(m)).

has "eschew[ed] any 'theory of liability' in which defendants played 'no affirmative part in depriving any[one] . . . of any constitutional rights'" (quoting *Rizzo v. Goode*, 423 U.S. 362, 376–77 (1976)) (first alteration added)).

As to Kubert, the Complaint seems to allege that he is the City's public safety director and had some supervisory role over the arresting officers. (*See* 1AC ¶¶ 46, 50, 104.) A claim against a supervisor "requires particular 'allegations of personal direction or of actual knowledge and acquiescence,'" and there is no vicarious liability for the acts of the arresting officers. *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). There are no such allegations regarding Kubert. As part of the false arrest count, the Complaint simply alleges that "[i]t was not objectively reasonable for Individual Defendant Police Officers and Individual Defendant Kubert . . . to believe they could arrest Plaintiff under a summons complaint." (1AC ¶ 50.) The count does not allege that Kubert ordered or acquiesced to the arrest. As part of the NJRICO count, the Complaint alleges that Kubert and Davis "direct[ed] their subordinates to 'Do' Plaintiff and use excessive force, file false police reports in the arrest and illegal detention." (1AC ¶¶ 104.) Even assuming that I should consider this allegation when construing the civil rights claims, it is too conclusory; it cites no facts or basis for knowledge, but merely seems to hypothesize supervisory involvement. It does not "portray specific conduct" by Kubert regarding his direction of the allegedly unconstitutional arrest. *Chavarriaga*, 806 F.3d at 222 (quoting *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970)); *see Evancho v. Fisher*, 423 F.3d 347, 353–54 (3d Cir. 2005) (holding that a public employee's assertion that her employer directed her unlawful transfer was insufficient and required more facts about the employer's role). Accordingly, the claims against Kubert fail.

That leaves Kazan and Spiers. The Complaint at least alleges that they arrested Cresci and that the arrest and subsequent detention were unconstitutional. (1AC ¶¶ 30–32.) Thus, construed liberally, the Complaint

alleges some personal involvement as to Kazan and Spiers as arresting officers. Accordingly, I next analyze whether the Complaint makes any plausible claim that the arrest and detention were unconstitutional.

### 2. The Claims Against Kazan and Spiers

The civil rights claims against Kazan and Spiers will all fail if there was probable cause for the arrest.[5] *See Harvard v. Cesnalis*, --- F.3d ---, No. 20-1012, 2020 WL 5200679, at *4 (3d Cir. Sept. 1, 2020) (false arrest and imprisonment); *Geness v. Cox*, 902 F.3d 344, 356–57 (3d Cir. 2018) (malicious prosecution); *Berg v. County of Allegheny*, 219 F.3d 261, 269–70 (3d Cir. 2000) (search and seizure); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) (retaliatory arrest).[6] An arrest warrant will generally supply probable cause to arrest, unless the plaintiff can show that there was no genuine finding of probable cause underlying the warrant. *See Geness*, 902 F.3d at 356–57; *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000). Accordingly, the fact that a plaintiff was arrested pursuant to a bench warrant will defeat Cresci's claims. *See Lear v. Phoenixville Police Dep't*, 734 F. App'x 809, 812 (3d Cir. 2018) (bench warrant provides probable cause); *Johnson v. Provenzano*, 646 F. App'x 279, 281 (3d Cir. 2016) (same). The Complaint alleges that Kazan and Spiers arrested Cresci pursuant to an outstanding bench warrant. (1AC ¶ 25.)

---

5  Although the Complaint briefly alleges that there was no basis for the traffic stop (1AC ¶ 28(a)), the civil rights claims only allege that the arrest and detention pursuant to the bench warrant were unconstitutional (*id.* ¶¶ 47, 57), and there is no mention of the wrongfulness of the traffic stop in the claims for relief. Accordingly, I focus on whether the arrest will support any of Cresci's claims and not whether the traffic stop was unconstitutional and could give rise to liability. *See generally United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (explaining that, while the Fourth Amendment prohibits traffic stops without reasonable suspicion, "any technical violation of a traffic code legitimizes a stop, even if the stop is merely a pretext" for something else). In short, the test of the validity of the arrest is an objective one; if the arrest was valid pursuant to the outstanding warrant, then the validity of the traffic stop ceases to be germane.

6  Although these are § 1983 cases, the analysis is the same for Cresci's NJCRA claims. *Walker*, 2020 WL 3542502, at *13.

7

Although the Complaint alleges that the warrant contained a clerical error, there is no allegation that the warrant was wrongfully issued. (1AC ¶ 25.)[7] Accordingly, I will dismiss the civil rights claims (Counts A, B, C, and D) against Kazan and Spiers.

### C. Civil Rights Claims Against the City

The Complaint appears to allege each of its civil rights claims against the City in addition to the individual Defendants, either by alleging that the City itself committed an unconstitutional act (1AC ¶ 62 ("Defendant City of Bayonne . . . retaliated against Plaintiff . . . .")) or alleging the claim against "Defendants" generally (*id.* ¶ 60). The Complaint also alleges a municipal liability claim against the City (Count E). All claims against the City, however, must be dismissed.

#### 1. Counts A through D

The civil rights claims against the City (Counts A–D) must be dismissed because "a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy,'" also known as a *Monell* claim. *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1951 (2018) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (*Monell* liability extends to policy informally adopted by custom or a municipality's failure to train, supervise, or discipline employees). Thus, Cresci can only maintain a civil rights claim against the City *via* a *Monell* theory.

#### 2. Count E

The *Monell* claim against the City (Count E) fails for two reasons. First, because Cresci has no viable claims that the individual Defendants violated his constitutional rights, *supra* Section II.B, he cannot maintain a derivative

---

[7] Execution of an arrest pursuant to a facially valid judicial warrant, where an officer has no reason to believe the facts did not set forth probable cause, is also a classic scenario for qualified immunity. *See generally Malley v. Briggs*, 457 U.S. 335 (1986), Finding no underlying constitutional violation, I do not reach that issue.

municipal liability claim against the City. *Vargas v. City of Philadelphia*, 783 F.3d 962, 974–75 (3d Cir. 2015). Second, even if there were underlying constitutional violations, the Complaint does not provide sufficient factual allegations to show that they stemmed from a municipal policy or custom. Instead, the Complaint merely recites the legal standards for municipal liability. (1AC ¶¶ 74–91) Such conclusory allegations are insufficient. *Compare Roman*, 914 F.3d at 798–801 (allegations of municipal liability withstood a motion to dismiss when they were supported by a newspaper article investigating the police department and a consent decree with the Department of Justice entered into after an investigation). For these reasons, I will dismiss Count E.

### D. NJRICO Claims

The Complaint pleads NJRICO and NJRICO conspiracy claims against all Defendants (Counts F and G). These claims fail for at least two reasons.

First, a NJRICO plaintiff must plead that the racketeering caused an injury to his "business or property"—and "injuries to one's person" do not qualify. *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323–24 (3d Cir. 2015) (first quotation quoting N.J. Stat. Ann. § 2C:41-4). The Complaint's allegations of injury are conclusory; they simply recite the legal elements of a NJRICO claim. (1AC ¶¶ 111 ("Plaintiffs have suffered and continue to suffer economic and emotional distress damages . . . ."), 116 ("loss of employment, loss of business reputation, and other damages").) Setting aside those conclusory allegations, the Complaint recites only the alleged constitutional injuries Cresci experienced, which would constitute "injuries to one's person," not actionable under NJRICO. *Williams*, 765 F.3d at 323. Thus, the Complaint does not adequately allege NJRICO injury.

Second, a NJRICO plaintiff must also plead that the defendants committed predicate criminal offenses. *State v. Ball*, 661 A.2d 251, 261–62 (N.J. 1995); *see also Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000). As predicate offenses, the Complaint merely alleges that

9

Davis and Kubert committed bribery, extortion, official misconduct, and misuse of public office—with no accompanying facts. (1AC ¶ 104.) Conclusory allegations, without facts, of predicate offenses are insufficient to support a viable NJRICO claim, *Doug Grant*, 232 F.3d at 187, so the NJRICO claims must be dismissed for that reason as well.

For these reasons, I will dismiss Counts F and G.

### III.  CONCLUSION

For the reasons set forth above, the motion to dismiss is granted. To recap, all civil rights claims (Counts A through D) against Elawady, Olmo, Ragozzino, DeMarco, Davis, and Kubert fail because the Complaint does not adequately allege that they were personally involved in any constitutional violation. The claims against Kazan and Spiers fail because Cresci was arrested pursuant to a bench warrant, issued on a finding of probable cause. Counts A through D against the City fail because Cresci can only assert a *Monell* claim against the City, and the *Monell* claim (Count E) fails because there are insufficient allegations of a policy or custom. Finally, the NJRICO claims fail because there are no allegations of cognizable injury or predicate offenses.

A separate order will issue.

Dated: September 24, 2020

/s/ Kevin McNulty

---

**Hon. Kevin McNulty**
**United States District Judge**